**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CYNTHIA CARTER MCREYNOLDS, <u>et al.</u>,** )<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:01-CV-00510 (ESH)** |
| ) | |
| **SODEXHO MARRIOTT** )<br>**SERVICES, INC.,** )<br>) | |
| ) | |
| **Defendant.** ) | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

Under Rules 23(a), 23(b), 23(c) and 23(e) of the Federal Rules of Civil Procedure,

Defendant Sodexho Marriott Services, Inc. ("Sodexho") and participating Named Plaintiffs,

through undersigned counsel, hereby move this Court for preliminary approval of the proposed

Settlement Agreement and Consent Decree ("Decree") resolving all claims in the above-

captioned matter, for certification of settlement classes for monetary and non-monetary relief, for

an order directing notice to the proposed class, and for a scheduling order setting deadlines for

objections and setting a fairness hearing.

The grounds for this Joint Motion are set forth in the accompanying Memorandum of

Law.  A proposed order accompanies this Joint Motion.

This Joint Motion is not opposed.

Respectfully submitted,

_____

Kerry Alan Scanlon, #942276
Nicole J. Becton, #473735
KAYE SCHOLER, LLP
901 15th Street, NW, Suite 1100
Washington, D.C.  20005
(202) 682-3500

Counsel for Plaintiffs

_____

| | |
|---|---|
| R. Lawrence Ashe, Jr., *pro hac vice*<br>Nancy E. Rafuse, *pro hac vice*<br>William B. Hill, Jr., *pro hac vice*<br>Ashe & Rafuse, LLP<br>1355 Peachtree Street, N.E.<br>Suite 500<br>Atlanta, GA  30309-3232<br>(404) 253-6000<br>Fax: (404) 253-6060 | Glen D. Nager, #385405<br>Alison B. Marshall, #46168<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, DC  20001-2113<br>(202) 879-3939<br>Fax: (202) 626-1700 |
| Barbara L. Johnson<br>Paul, Hastings, Janofsky<br> & Walker LLP<br>875 15th Street, NW<br>Washington, DC  20005<br>(202) 551-1700<br>Fax: (202) 551-1705 | Todd J. Horn, #470780<br>George W. Johnston, #463079<br>Karl A. Racine, #431534<br>Venable LLP<br>Two Hopkins Plaza<br>Baltimore, Maryland  21201<br>(410) 244-7400<br>Fax: (410) 244-7742 |
| | Counsel for Defendant |

May ___, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CYNTHIA CARTER MCREYNOLDS, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:01-CV-00510 (ESH)** |
| | ) | |
| | ) | |
| **SODEXHO MARRIOTT SERVICES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

After extensive discovery and protracted arms-length negotiations by experienced counsel, the parties to this case have reached a settlement agreement that resolves all issues between them.   The proposed settlement agreement is eminently reasonable, fair, adequate and should therefore be preliminarily approved.  For purposes of settlement, the parties also seek certification of a class under Federal Rule of Civil Procedure 23(b)(2) as to the non-monetary relief provided in the settlement agreement, and under Federal Rule of Procedure 23(b)(3) as to the monetary relief.  The proposed settlement classes meet all the necessary requirements and should be certified by the Court.

## BACKGROUND

1.      On March 9, 2001, the named plaintiffs filed a Class Action Complaint alleging that Defendant Sodexho Marriott Services, Inc., now Sodexho, Inc. ("Sodexho"), had engaged in "systematic discrimination in upper-level management promotions" in alleged violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991.  See Class Action Complaint at 2-3.  Plaintiffs claimed that Sodexho had engaged in a pattern and practice of unlawful discrimination in promotions.  Id. at 51.  Plaintiffs also claimed that Sodexho's "promotional decisionmaking process" has had a "disparate impact on the basis of race."

2.      Sodexho filed an answer to the Complaint denying the allegations and specifically denying any violation of law.

3.      In a Memorandum Opinion and Order dated June 25, 2002 and entered June 27, 2002, the Court granted plaintiffs' motion for class certification, but only insofar as plaintiffs "have fulfilled the requirements of Fed. R. Civ. P. 23(b)(2) with respect to the liability phase of the case . . . ."  Memorandum Opinion at 1 & 29 n.27.  The Court certified, "as to liability only," a class:

>                of all African-Americans who are or were salaried employees of
> Sodexho [] at any time from March 9, 1998, to the present, and
> who have held or sought to obtain (1) an upper-level managerial,
> supervisory, or professional position (above-the-unit or
> comparable level of responsibility) or (2) a job that would lead to
> such a position, and who have been, continue to be, or may be in
> future be adversely impacted by Sodexho's racially discriminatory
> policies and practices affecting promotions or advancement.

The Court declined to certify a class for damages claims under either Rule 23(b)(2) or Rule 23(b)(3) "at this stage" of the litigation.  Id. at 36-37.

4.      On January 14, 2003, the Court amended its class certification order to exclude from the certified class "salaried African-American employees who were not employed . . . at any time between March 27, 1998 and July 2001." Order of January 14, 2003.  The Court also ruled that, "for purposes of determining liability in this case, promotion decisions that occurred after June 22, 2001 shall not be considered." Id.

5.      This action has been vigorously prosecuted and defended.  The parties have engaged in extensive discovery, including several dozen depositions.  Under the Court's scheduling order, discovery closed on February 29, 2004.  Trial was scheduled to begin on May 2, 2005.

6.      At the Court's direction, the parties renewed settlement discussions with a mediator in January 2004 and have been working diligently since then to resolve their differences on all outstanding issues.  These direct negotiations have resulted in the proposed Settlement Agreement and Consent Decree ("Decree") now before the Court.  The proposed Decree, which represents the parties' agreement on all issues and claims raised in this action, is entered into by Class Counsel, on behalf of participating Named Plaintiffs and the settlement class members, and defendant Sodexho.

7.      Notwithstanding the terms of the proposed Decree, Sodexho denies any and all liability to the named plaintiffs and the class and denies that it has violated either Title VII or Section 1981.

## SUMMARY OF PROPOSED SETTLEMENT AND CONSENT DECREE

The proposed Decree resolves all issues and claims raised in this action.  As part of the Decree, the parties reached agreement on: (1) Non-Monetary Provisions; (2) Recordkeeping, Reports, and Monitoring; (3) Notice, Objections, and Opt-Outs; (4) Monetary Payments and Claims Procedure; (5) Attorneys' Fees and Costs (subject to separate award by the Court); (6) Dispute Resolution; and (7) Non-Disparagement.  The Decree also provides for a Release of Claims.

Section VII of the Decree sets forth the non-monetary provisions to which Sodexho has agreed.  Generally, these provisions concern Sodexho's (a) commitment to diversity and equal employment opportunity; (b) equal employment opportunity and diversity training; (c) job posting; (d) validated promotion selection process; (e) performance management process; (f) manager and executive accountability; (g) Office of Employment Rights (OER) and equal employment opportunity complaint process; (h) client non-discrimination policy; and (i) employee network groups.  Specifically, the Decree requires Sodexho to:

- Publish and adopt a Statement of Commitment to Diversity that communicates Sodexho's commitment to being a leader in the field of diversity and equal employment opportunity, and to post the Statement prominently on Sodexho's website;

- Publish an annual Diversity Report that reaffirms Sodexho's commitment to diversity and includes the Statement of Commitment to Diversity referenced above;

- Re-publish internally Sodexho's company-wide policy prohibiting racial discrimination, harassment and/or retaliation;

- Continue to offer affirmative action reporting and planning training to all General Managers at units with 50 or more employees and to all District Managers covered by a District roll-up Affirmative Action Plan, and continue to offer comparable training to newly hired or promoted managers in these categories within 12 months of their hire or promotion;

- Provide equal opportunity and affirmative action training, using the curriculum previously developed for Sodexho by Seyfarth Shaw or comparable curriculum, to any current managers who have not received such training and to all newly hired managers and persons promoted into a manager position for the first time within 12 months after their appointment;

- Provide diversity training to managers company-wide;

- Follow detailed procedures for job postings set forth in the Decree, and regularly audit the posting process;

- Complete the development and implementation of a validated promotion selection process for salaried exempt management positions;

- Design a structured selection process for various positions to evaluate the degree to which candidates possess the specified competencies, and maintain interview ratings and selection decisions where the new selection process is in place;

- Provide managers with notice of the new promotion selection procedures in a reasonable time as they are implemented, and conduct training sessions for managers on the new selection processes as they are implemented;

- Complete the development and implementation of new performance appraisal tools for exempt employees;

- Maintain a diversity and inclusion component to Sodexho's annual bonus plan for managers;

- Staff the OER, which investigates and resolves internal complaints of employment discrimination by salaried, exempt employees, to the level necessary to provide prompt and appropriate service, and follow detailed procedures set forth in the Decree whereby any employee who believes he or she has been the subject of employment discrimination, harassment, and/or retaliation may file a complaint with the OER;

- Retain complaints filed with the OER, investigative files, findings of good cause not to investigate, and records documenting any remedial and/or disciplinary action taken;

- Issue a notice to exempt employees reminding them of the potential adverse consequences of engaging in any discriminatory action, and specifying the behavior subject to disciplinary action;

- Take steps to ensure that placement of Sodexho's managers in specific accounts or units is not influenced in any way by discrimination or racial preferences initiated or requested by the client;

- Continue the Employee Networks program, which provides for recognition and support of employee network groups for exempt employees, and provide recognized Employee Networks with a one-time payment of at least $5000 and reasonable use of floor copiers and other facilities.

Section VIII of the Decree addresses Recordkeeping, Reports and Monitoring and provides for a panel of Decree Monitors that will operate as a team and work together in their monitoring of the implementation of this Decree.  Among other things, the Decree Monitors shall receive reports concerning Sodexho's development and implementation of a validated promotion selection process, meet annually with Sodexho's Senior Vice President of Human Resources and Senior Vice President of Diversity, and review the records of Sodexho's equal employment opportunity and diversity training as the Decree Monitors deem appropriate to monitor Sodexho's progress in implementing the non-monetary provisions of the Decree.

The Decree Monitors must prepare an annual report to Sodexho with a copy to Class Counsel setting forth their findings as to Sodexho's compliance with the Decree for that year.  If the Decree Monitors determine that Sodexho is not in full compliance, they shall specify in writing (1) the specific terms that Sodexho has not satisfied, and (2) recommendations as to steps that Sodexho should take to come into compliance.  Sodexho shall meet with the Decree Monitors to discuss each recommendation and to formulate appropriate responses.  If the Decree Monitors are not satisfied with Sodexho's responses, they may invoke a dispute resolution process that includes a provision for filing an appropriate motion for enforcement with the Court. Only the Decree Monitors shall have authority to seek to enforce against Sodexho the provisions of Section VII and VIII of the Decree.

Section VIII also provides for the retention by Sodexho of specified employment records for specified periods of time.  These records include, among others, tracking reports for equal employment opportunity training, interview ratings and selection decisions for posted positions

using the validated selection process, and any complaints filed with the OER.  The Decree

Monitors shall be entitled to review these documents (except for those documents protected by

attorney-client or work-product privilege).  All documents required to be maintained by the

Decree are and shall be treated as confidential business records.  Finally, Section VIII sets forth a

detailed schedule of progress reports that Sodexho shall provide to the Decree Monitors on its

compliance with the Decree's requirements.

Section IX of the Decree addresses Notice, Objections, and Opt-Outs.  Under this Section

of the Decree, Sodexho shall retain an independent Claims Administrator that will (1) distribute

preliminary notice; (2) receive and forward opt-out statements; (3) receive and forward

objections; (4) distribute final notice and claims forms and releases; (5) verify the validity of

each claim submitted and certify eligible claimants; (6) confirm execution of a release by each

eligible claimant; and (7) administer the disbursement of payments to eligible claimants.

Sodexho shall be responsible for all reasonable fees, expenses, and costs incurred by the Claims

Administrator.  Section IX provides for individuals the right to opt-out of the class for purposes

of monetary relief only; no settlement class member or named plaintiff may opt out of the

injunctive relief provisions of the Decree.  Section IX also provides that Sodexho may, at its

option, void the Decree if there are an excessive number of opt-outs, as defined in Section IX.D

of the Decree.

Section X, Monetary Payments and Claims Procedures, provides for service award

payments for the named plaintiffs (as well as for affiants, deponents, and executive committee

members who are not named plaintiffs) to compensate them for the time and energy they have

devoted in litigating this action.  Section X also provides for monetary payments to settlement

class members who believe that they were discriminated against because of their race in

connection with a promotion to a salaried exempt position.  Specifically, the Decree provides that: (1) Eligible Claimants hired between July 2, 2001 and June 1, 2004 into a salaried exempt position shall receive $2,000, less any applicable withholdings and deductions; and (2) Eligible Claimants who were in salaried exempt positions at any time between March 27, 1998 and July 1, 2001, shall receive $492 per month of salaried exempt service prior to July 1, 2001, less any applicable withholdings and deductions, subject to a ceiling of 120 months of salaried exempt service, and provided that no Eligible Claimants receive less than $5,000, less any applicable withholdings and deductions.  Section X sets forth a claims determination process, and provides that all determinations of the Claims Administrator shall be final, binding and non-appealable. Sodexho itself shall have no responsibility for or role in the claims determination process, except as requested by the Claims Administrator to facilitate the review and/or payment of claims.  In addition, Section X provides a procedure for distributing the monetary payments.

Section XI of the decree addresses reasonable attorneys' fees and costs for class counsel. Under Section XI, class counsel may petition the Court to award costs and a reasonable attorneys' fee, based on prevailing legal standards.  Sodexho will not oppose any such motion, but shall in no event be obliged to pay more than $26,666,667.00 in attorneys' fees and costs. Section XII, Release, provides for the named plaintiffs' and class members' release of all claims that they may have against Sodexho that have been or could have asserted in this litigation.

Section XIII of the Decree addresses Dispute Resolution and establishes a procedure to govern all disputes concerning compliance with the Decree.  Either party may invoke the dispute resolution process upon belief that the other party has breached the Decree.  Upon receiving written notice of an alleged violation, the responding party shall have 45 days to correct the alleged violation and/or respond to the initiating party.  If the response does not address the

alleged violation to the initiating party's satisfaction, the parties shall engage in a good-faith

negotiation for up to 45 days in order to resolve their differences.  If the parties are unable to

reach an agreement, then either party may file an appropriate motion for enforcement with the

Court.  Reasonable fees and costs incurred in preparing and litigating such a motion may be

recovered by any prevailing party.

## ARGUMENT

## I.       THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES.

To certify a class for settlement purposes under Federal Rule of Civil Procedure 23(e) the

Court must be satisfied that the class satisfies the requirements of Rules 23(a) and 23(b).

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 622 (1997).  The Court has already certified a

class under Federal Rules of Civil Procedure 23(a) and 23(b)(2) for purposes of liability.  For

purposes of settlement, and with respect to the non-monetary relief provided by the Decree, the

parties now seek certification under Rule 23(b)(2) of a class consisting of all African-Americans

who were salaried employees of Sodexho in the United States any time between March 27, 1998

and the date upon which the Court grants final approval of the Decree and the time for appeals

has run.  As to monetary relief provided in the Decree, the parties seek certification under Rule

23(b)(3) of a class consisting of all African-Americans who (1) were salaried employees of

Sodexho in the United States any time between March 27, 1998 and June 1, 2004, and (2) do not

opt-out of the settlement.  Certification of the proposed settlement classes is proper under

Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3).

### A.       Rule 23(a) Standards Are Satisfied.

Under Rule 23(a) of the Federal Rules of Civil Procedure, a class must meet four

requirements for certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy

of representation.   Fed. R. Civ. P. 23(a); <u>see also</u> <u>General Telephone Co. v. Falcon</u>, 457 U.S.

147, 161 (1982).  The proposed settlement classes meet all necessary Rule 23(a) requirements.

The numerosity requirement is met if the class is so large that joinder of all members

would be impracticable.  <u>Stewart v. Rubin</u>, 948 F. Supp. 1077, 1088 (D.D.C. 1996), <u>aff'd</u>, 124

F.3d 1309 (D.C. Cir. 1997) (certifying a class action for alleged discrimination in a variety of

personnel practices under Title VII where the plaintiffs identified approximately 235 class

members).  The Court already found sufficient numerosity when it certified a class for purposes

of liability.  Memorandum Opinion at 20 (stating that an estimated 2000-member class "clearly"

satisfied the Rule 23(a) numerosity requirement).  The proposed settlement classes are even

larger.  Thus, the proposed settlement classes easily meet the numerosity requirement of Rule

23(a)(1).

The commonality requirement is met if there are questions of law and fact common to the

class.  <u>Stewart</u>, 948 F. Supp. at 1088.  The Court has already concluded that the class certified for

liability purposes satisfied the commonality requirement.  <u>See</u> Memorandum Opinion at 21

("The Court is satisfied that there are common questions of law and fact with respect to the class

and its representatives.").  Specifically, the Court found that the named plaintiffs "have made a

'significant showing' of a 'common policy of discrimination . . . .'"  <u>Id.</u> at 21-22 (quoting

<u>Hartman v. Duffey</u>, 19 F.3d 1459, 1473 (D.C. Cir. 1994)).  Although Sodexho disagreed with the

Court's conclusion, the Court's reasoning plainly could be applied to the proposed settlement

classes.

The typicality requirement is met if the claims of the named representatives are typical of

the claims of the class as a whole.  <u>Stewart</u>, 948 F. Supp. at 1088.  The named representatives'

claims are typical if the named representatives "suffered injury from a specific discriminatory

promotional practice of the employer in the same manner that the members of the proposed class did, and [if the named representatives] and the class members were injured in the same fashion by a general policy of employment discrimination." Wagner v. Taylor, 836 F.2d 578, 594 (D.C. Cir. 1987). The Court has already found that the named "plaintiffs have made a convincing showing of a common policy of discriminatory treatment that extends across divisions, units, and geographic regions, including those where the proposed representatives worked . . . ." Memorandum Opinion at 29. Based on this finding, the Court ruled that the named plaintiffs "have made a sufficient demonstration that the claims of the class representatives are largely typical of the class." Id. More precisely, the Court determined that for purposes of liability, the class representatives' claims "are typical of those of all members of the class following the formation of Sodexho on March 27, 1998 . . . ." Again, while Sodexho disagreed with the Court, the Court's reasoning applies equally to the proposed settlement classes.

The adequacy requirement is met when the named plaintiffs and their counsel (1) do not have any conflicts of interest with other class members, and (2) will prosecute the case vigorously on behalf of the class. See National Association of Regional Medical Programs, Inc. v. Mathews, 551 F.2d 340, 344-45 (D.C. Cir. 1976); Stewart, 948 F. Supp. at 1088-89. As to the first prong, this Court has already found that there is no improper conflict of interest sufficient to defeat certification among the named plaintiffs and other members of the class certified for liability purposes. Memorandum Opinion at 34 (stating that in the absence of specific allegations of discrimination by class members against class members, "[t]he mere fact that some putative class members were involved in the supervision and rating of other class members" does not rise to the level of conflict that would render the named plaintiffs inadequate to represent the interests of the class). Given that determination, the settlement classes also should satisfy the

first prong of the adequacy test.  The second prong of the Rule 23(a)(4) adequacy test requires a finding that the named plaintiffs and their counsel will prosecute the case vigorously on behalf of the class.  Here, class counsel's "impressive experience and qualifications" have never been questioned.  See id. at 31.  Moreover, the parties reached the instant settlement agreement only after years of litigation, including discovery and prior mediation attempts, and class counsel's vigorous prosecution of plaintiffs' Title VII and Section 1981 claims easily satisfies Rule 23(a)(4).

Under the foregoing circumstances, all the requirements of Rule 23(a) are met with respect to the proposed settlement classes.

### B.     Rule 23(b)(2) Standards Are Satisfied.

In addition to satisfying the requirements of Rule 23(a), parties seeking certification must also show that the action is certifiable under Rule 23(b).  Amchem, 521 U.S. at 614.  The parties seek certification under Rule 23(b)(2) of a settlement class with respect to the non-monetary relief provisions of the Decree.  See Eubanks v. Billington, 110 F.3d 87, 92 (D.C. Cir. 1997) (stating that at the remedy stage, "the court may adopt  a 'hybrid' approach, certifying a (b)(2) class as to the claims for declaratory or injunctive relief, and a (b)(3) class as to the claims for monetary relief"); Taylor v. District of Columbia Water & Sewer Auth., 205 F.R.D. 43, 52 (D.D.C. 2002) ("Certification under (b)(2), (b)(3), or hybrid or partial approaches is available to Title VII claimants seeking [monetary and non-monetary] relief . . . . ").  Title VII and other civil rights class actions are frequently certified pursuant to Rule 23(b)(2).  See Amchem, 521 U.S. at 614 (citing "[c]ivil rights cases against parties charged with unlawful, class-based discrimination" as "prime examples" of appropriate Rule 23(b)(2) class actions); see also generally 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and

Procedure § 1776 (2d ed. 1986); Federal Rule of Civil Procedure 23 advisory committee's note (1966).

Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court has already ruled that "[a]ny finding of liability is tied to the actions of Sodexho with respect to the class as a whole, and any subsequent injunctive or declaratory relief would have a significant impact on the company's policies and practices in relation to the entire plaintiff class." Memorandum Opinion at 36.

Under this reasoning, the settlement class satisfies Rule 23(b)(2) as well: The comprehensive provisions that the parties have agreed upon—including extensive monitoring procedures, intensive management training, the completed development and implementation of a validated promotion process for exempt positions, and new performance appraisal tools for exempt employees—clearly will have a "significant" impact on the "company's policies and practices in relation to the entire plaintiff class." See, e.g., Thomas v. Albright, 139 F.3d 227, 229-30 (D.C. Cir. 1998) (affirming certification of settlement class under Rule 26(b)(2) where consent decree included provisions for non-monetary relief such as prescribed monitoring procedures that "both redress past and deter future discrimination in assignments"); Eubanks, 110 F.3d at 93 (settlement agreement in action certified pursuant to Rule 23(b)(2) included "new procedures for competitive selections" and "equal employment opportunity training" of supervisors). Thus, certification of the proposed settlement class as to the non-monetary relief provided in the Decree is appropriate under Rule 23(b)(2).

### C. Rule 23(b)(3) Standards Are Satisfied.

The proposed class for monetary relief should also be certified under Rule 23(b)(3). Rule 23(b)(3) provides for certification of a class where "the court finds that [1] the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In <u>Amchem Products, Inc. v. Windsor</u>, the Supreme Court held that a different analysis applies under Rule 23(b) with respect to settlement classes because, if the case is going to be settled, then the "district court need not inquire whether the case, if tried, would present intractable management problems." 521 U.S. 591, 620 (1997); <u>see</u> <u>also</u> <u>Thomas v. Albright</u>, 139 F.3d at 224. In other words, "[t]he manageability and efficiency of a class action settlement is quite different than that in a litigated case." <u>Stewart</u>, 948 F. Supp. at 1091 (stating that "because of the mediated settlement, the posture of this case is much different" than a class action requiring over 1,000 individualized jury trials). For these reasons, as Sodexho has argued, settlement classes "much more readily fall under 23(b)(3)." Opp. to Class Cert. Motion at 48 n.39. That is certainly true of the proposed settlement class here, which should be certified under Rule 23(b)(3) with respect to the monetary relief provided in the Decree.

The first requirement of Rule 23(b)(3) is that common factual and legal issues predominate over any such issues that affect only individual class members. The "predominance" requirement is meant to "cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision to persons similarly situated, without sacrificing procedural fairness or bringing other undesirable results.'" <u>Amchem</u>, 521 U.S. at 615 (quoting Adv. Comm. Notes, Rule 23(b)(3)). Here, the Court's earlier

determination under Rule 23(a)(2) that the named plaintiffs have made a "significant showing of a common policy of discrimination" for purposes of liability could be applied to the Rule 23(b)(3) "predominance" inquiry in the context of a proposed settlement class.  Rule 23(b)(3)'s predominance inquiry is "related to the commonality requirement of Rule 23(a) in that 'the common issues identified as sufficient under Rule 23(a) must be shown by the plaintiffs to predominate over the non-common issues [but] the common issues do not have to be shown to be dispositive.'"  See Bynum v. District of Columbia, 214 F.R.D. 27, 39 (D.D.C. 2003) (citing In re Vitamins Antitrust Litig., 209 F.R.D. 251, 262 (D.D.C. 2002)).  The Court's determination that the named plaintiffs have made a "significant showing of a common policy of discrimination" in this pattern or practice and disparate-impact case weighs heavily in favor of Rule 23(b)(3) certification of the proposed settlement class.

A number of courts have held that the predominance requirement is met where, as here, the existence of a policy or practice of illegal discrimination is in issue.  See, e.g., Chiang v. Veneman, 213 F.R.D. 256 (D.V.I. 2003) (predominance requirement satisfied where common question whether defendant's policy or practice discriminated against African-Americans, women and Virgin Islanders predominated over any differences in the factual circumstances of the individual class members); Rodolico v. Unisys Corp., 199 F.R.D. 468 (S.D.N.Y. 2001) (predominance requirement satisfied where plaintiffs claimed that a reduction-in-force was the result of a centralized plan that had been organized by the company's top management to lay off older workers because of their age); see also 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986) (stating that "the existence of illegal discrimination" is an issue that has been viewed "as having overriding significance and therefore [has] been held to predominate" and citing cases).  Similarly, this Court's

determination in certifying the class for liability purposes that the named plaintiffs have made a "significant showing of a common policy of discrimination" in this pattern or practice and disparate-impact case, coupled with the "overriding significance" of the issue in the litigation, could be held to satisfy the predominance requirement of Rule 23(b)(3) with respect to the proposed settlement class.

The second requirement of Rule 23(b)(3) is that the Court find that maintaining the instant action as a class action will be superior to other available methods of adjudication.  That requirement is easily met where, as here, the "ultimate settlement of th[e] action envisions the creation of a mechanism on a class-wide basis that will then be utilized to resolve the individual claims of class members outside the traditional litigation process." Pigford v. Glickman, 185 F.R.D. 82, 94 (D.D.C. 1999), aff'd, 206 F.3d 1212 (D.C. Cir. 2000).  This is especially true in a pattern or practice case where, even if there were an adjudication of liability against the defendant, "fashioning injunctive relief and determining individual monetary relief" would be a "lengthy, time consuming, and an uncertain process" because, if each claimant were to have an individual hearing under Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977), "it could easily take several years before the remedial phase of the litigation was completed." Stewart, 948 F. Supp. at 1087 n.4 (citing Berger v. Iron Workers, 1994 WL 151292 (D.D.C. 1994)).  For settlement purposes, a class action is far superior to other available methods for the fair and efficient adjudication of this controversy.  See Amchem, 521 U.S. at 619 ("Settlement is relevant to a class certification.").

In summary, certification of the proposed settlement classes is appropriate under Rules 23(a), 23(b)(2) and 23(b)(3).  See Eubanks, 110 F.3d at 92 (approving a "hybrid" approach of certifying a Rule 23(b)(2) class as to claims for declaratory or injunctive relief and a Rule

23(b)(3) class as to claims for monetary relief); <u>Taylor</u>, 205 F.R.D. at 52 (stating that

certification under Rule 23(b)(2), Rule (b)(3), or "hybrid or partial approaches" is available to

Title VII claimants).  The Court should therefore certify the proposed classes for settlement

purposes.

## II.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE DECREE.

Federal Rule of Civil Procedure 23(e) conditions settlement of any class action on court

approval.  <u>Amchem</u>, 521 U.S. at 617; <u>Thomas</u>, 138 F.3d at 231.  Class action settlements are

generally subject to a two-step approval process.  "[F]irst the court conducts a preliminary

approval or pre-notification hearing to determine whether the proposed settlement is 'within the

range of possible approval' or, in other words, whether there is 'probable cause' to notify the

class of the proposed settlement."  <u>Horton v. Merrill Lynch</u>, 855 F. Supp. 825, 827 (M.D.N.C.

1994) (citing <u>Armstrong v. Bd. of School Directors</u>, 616 F.2d 305, 312 (7th Cir. 1980)).

Preliminary or conditional approval allows parties to avoid the unnecessary expenditure of

resources arising from notice to the class of a settlement that cannot possibly gain court approval.

If a proposed settlement receives preliminary approval, the parties provide notice to the

class in a manner directed by the court.  Once the court grants preliminary approval and notice is

provided, the court conducts a "fairness hearing" at which all interested parties are afforded an

opportunity to be heard.  At the fairness hearing, the Court conducts a substantive evaluation of

the proposed settlement to determine whether it is "fair, adequate and reasonable and is not the

product of collusion between the parties."  <u>Thomas</u>, 138 F.3d at 231 (internal quotation marks

and citation omitted).

In this Circuit, there is no single test for determining whether a proposed class action

settlement should be approved.  <u>In re Lorazepam & Clorazepate Antitrust Litig.</u>, No. MDL

-17-

1290(TFH), 99MS276(TFH), Civ.99-0790(TFH), 2003 WL 22037741, *2 (D.D.C. June 16, 2003) (citing Pigford, 185 F.R.D. at 98 & n.13).  Generally, though, in determining whether a proposed settlement is "fair, adequate and reasonable," courts in this Circuit have considered the following factors:  (1) whether the settlement is the result of arms-length negotiations; (2) the terms of the settlement in relation to the strength of the plaintiffs' case; (3) the stage of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel.  Id. (citing cases).  In weighing these factors, the Court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case.  Pigford v. Glickman, 206 F.3d 1202, 1217 (D.C. Cir. 2000) (citing Thomas, 138 F.3d at 231)).

For purposes of the instant motion, the Court need only conduct a "preliminary evaluation of the proposed settlement" in order to assure that it "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of the class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . . .'"  In re Vitamins Antitrust Litig., Nos. MISC.99-197(TFH), MDL 1285, 2001 WL 856292, *4 (D.D.C. July 25, 2001) (quoting Manual for Complex Litigation § 30.41 (3d ed. 1999) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.")).  Preliminary approval is based upon the Court's "familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement."  In re Southern Ohio Correctional Facility, 173 F.R.D. 205, 211 (S.D. Ohio 1997).

This Court will find, after scrutinizing the settlement in light of the factors set forth above, that the Decree is eminently fair, reasonable and should be preliminarily approved.  As an

initial matter, the Court is very familiar with the issues and the evidence in this case, as reflected

in its thorough opinions resolving numerous motions, including Sodexho's Motion for Summary

Judgment and its motion to exclude plaintiffs' statistical expert.  Further, "there is no reason to

believe that the [Decree] was the product of collusion; in fact, it . . . is based on arms' length

negotiations by experienced" and reputable counsel for both parties after extensive discovery.

See In re Vitamins Antitrust Litigation, 2001 WL 856292 at *2 & *5 (stating that "a

'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached

in arm's length negotiations between experienced, capable counsel after meaningful discovery")

(quoting Manual for Complex Litigation (Third) § 30.42 (1995)).  The settlement here resulted

only after a number of mediations and extended settlement discussions.  Moreover, the

settlement here was reached only "after extensive factual development, so that counsel on both

sides . . . have had information sufficient to make a reasonable assessment of their risks of

litigation."  See Luevano v. Campbell, 93 F.R.D. 68, 86 (D.D.C. 1981).  The settlement comes

neither "too early to be suspicious nor too late to be a waste of resources," but rather "at a

desirable point in the litigation for the parties to reach an agreement and to resolve these issues

without further delay, expense, and litigation."  In re Vitamins, 2001 WL 856290, at *3.  Given

counsels' considerable experience, the extensive discovery and the lengthy arms-length

negotiations conducted in this case, the pendency of a long trial on liability, and the potential for

further proceedings thereafter, the Court should credit their opinion that the Decree is fair,

reasonable and adequate.  See In re Lorazepam & Clorazepate, 2003 WL 22037741 at *6.

Moreover, the Decree provides substantial, comprehensive injunctive relief—including

monitoring procedures, management training, the implementation of a validated promotion

process for exempt positions, and the development of new performance appraisal tools for

exempt employees—that will have a significant and serious impact on the company's policies and practices.  The Decree also assures that each class member who is eligible and chooses to participate can receive a per capita payment depending upon, among other things, the time period in which the class member was employed with Sodexho.  The Decree provides that Sodexho will compensate the named plaintiffs and certain other class members who actively participated in the litigation for the time and energy that they have devoted to this litigation by paying modest additional sums to each.  See In re Lorazepam & Clorazepate, Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002) (recognizing that incentive awards are "not uncommon" where a fund has been created for the benefit of the entire class).  The Decree further provides for the Court to set the award of reasonable attorneys' fees to class counsel.

Moreover, proceedings through trial and appeal would involve substantial litigation risks, would be costly, and would substantially delay resolution of this already lengthy action. Plaintiffs and the class would face risks in going forward given the defenses available to Sodexho.   In light of Sodexho's denial of liability, "monetary recovery certainly cannot be assumed."  See In re Lorazepam & Clorazepate, 2003 WL 22037741 at *4.  Even if there were an adjudication of liability against Sodexho, there would remain the "lengthy, time consuming, and . . . uncertain process" if individual hearings were to be held on each claimant's claim for monetary relief.  Stewart, 948 F. Supp. at 1087 n.4.  Thus, even if Sodexho were found liable, "it could easily take several years before the remedial phase of the litigation was completed."  See id. (citing Berger v. Iron Workers, 1994 WL 151292 (D.D.C. 1994)).  In sum, "bringing this case to trial likely would have been a very complex, long and costly proposition."  Pigford, 185 F.R.D. at 104.  Given the complexities of proof in pattern or practice and disparate impact cases,

together with the ordinary risks and delays inherent in all complex litigation, the Decree provides a significant benefit to the class.

When considered together, all these factors support preliminary approval of the proposed class action settlement under Rule 23(e).  Because the settlement is a "fundamentally fair, adequate, and reasonable" resolution of the disputed issues, it should be preliminarily approved by the Court.

## CONCLUSION

For the foregoing reasons, the proposed settlement classes should be certified and the proposed class-action settlement should be preliminarily approved.

Respectfully submitted,

_____
Kerry Alan Scanlon, # 942276
Nicole J. Becton, #473735
KAYE SCHOLER, LLP
901 15th Street, NW, Suite 1100
Washington, DC  20005
(202) 682-3500
Fax: (202) 682-3580

Counsel for Plaintiffs


R. Lawrence Ashe, Jr., *pro hac vice*           Glen D. Nager, #385405
Nancy E. Rafuse, *pro hac vice*                 Alison B. Marshall, #46168
William B. Hill, Jr., *pro hac vice*            Jones Day
Ashe & Rafuse, LLP                              51 Louisiana Avenue, N.W.
1355 Peachtree Street, N.E.                     Washington, DC  20001-2113
Suite 500                                       (202) 879-3939
Atlanta, GA  30309-3232                         Fax: (202) 626-1700
(404) 253-6000
Fax: (404) 253-6060

Barbara L. Johnson
Paul, Hastings, Janofsky
 & Walker LLP
875 15th Street, NW
Washington, DC  20005
(202) 551-1700
Fax: (202) 551-1705

Todd J. Horn, #470780
George W. Johnston, #463079
Karl A. Racine, #431534
Venable LLP
Two Hopkins Plaza
Baltimore, MD  21201
(410) 244-7400
Fax: (410) 244-7742

Counsel for Defendant

May ___, 2005