**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **CYNTHIA CARTER MCREYNOLDS,** ) | |
|     **et al.,** ) | |
|           **Plaintiffs,** ) | |
| ) | |
|     **v.** ) | **Civil Action No. 1:01-cv-00510 (ESH)** |
| ) | |
| **SODEXHO MARRIOTT SERVICES, INC.,** ) | |
| ) | |
|        **Defendant.** ) | |
| _____ ) | |

**CLASS COUNSEL'S MOTION FOR AN AWARD OF
ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS**

Kaye Scholer LLP, class counsel throughout this litigation, respectfully moves for an

award of attorneys' fees, litigation expenses and costs for their work and expenses in this action.

This motion is made pursuant to Section XI of the Settlement Agreement and Consent Decree

approved last year by this Court, and pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal

Rules of Civil Procedure. A proposed order and a supporting memorandum of law accompany

the motion.

Respectfully submitted,


_____/s/_____
Kerry Alan Scanlon #942276
David O. Bickart #355313
Karen R. Robinson #483207
KAYE SCHOLER LLP
901 15th Street, NW, Suite 1100
Washington, DC  20005
(202) 682-3500

Dated:  February 22, 2006          Class Counsel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| **CYNTHIA CARTER MCREYNOLDS,** | ) |
| **et al.,** | ) |
| **Plaintiffs,** | ) |
|  | ) |
|  | ) |
| **v.** | )   **Civil Action No. 1:01-CV-00510 (ESH)** |
|  | ) |
| **SODEXHO MARRIOTT SERVICES, INC.,** | ) |
|  | ) |
| **Defendant.** | ) |

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**CLASS COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS**

_____/s/_____
Kerry Alan Scanlon #942276
David O. Bickart #355313
Karen R. Robinson #483207
KAYE SCHOLER LLP
901 15th Street, NW, Suite 1100
Washington, DC  20005
(202) 682-3500

Dated:  February 22, 2006                    Class Counsel

### Preliminary Statement

Class counsel worked extremely hard throughout this case and achieved an extraordinary result on behalf of all African-American managers employed by Sodexho, the largest food services company in America. The class and Sodexho alike have praised the settlement, which includes workable steps to substantially strengthen the company's promotion system and EEO program and provides over 3,000 affected class members the opportunity for monetary compensation. The amount of attorneys' fees and costs class counsel now asks the Court to approve was agreed to by Sodexho as part of the settlement, and both case law and the declarations submitted in support of this request show that the amount sought is reasonable and falls squarely within the range of fees awarded in this type of case.

The retainer agreements class counsel signed with the named plaintiffs, which are typical of such agreements in this District, support a fee of one-third of the class recovery, but in this case, class counsel seeks a lower percentage, approximately 30.1% of the total settlement fund of $80 million. Based on information received from the Claims Administrator, it appears that, at a *minimum*, over 82% of the funds available to class members will actually be paid out. Although the Supreme Court has ruled that the amount *available* to class members is the appropriate gauge of the monetary benefit achieved, here the size of the fee request compared to the amount class members will actually receive is also eminently reasonable. Indeed, it is less than the percentage approved in a civil rights case in this District in the last month.

Because the quality of class counsel's work and the results achieved justify the maximum amount Sodexho agreed to pay, class counsel respectfully urges the Court to approve the fee award in full.

## I.      Background of This Motion

This motion for attorneys' fees arises from the settlement of a nationwide class action

commenced in this Court on March 9, 2001, alleging that Sodexho Marriott Services, Inc.

("Sodexho") discriminated against its African-American managers with regard to promotions, in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and

the Civil Rights Act of 1866, 42 U.S.C. § 1981.[1]  After more than five years of hard-fought,

complex litigation, the parties reached an agreement on the eve of trial requiring Sodexho to

make significant changes in its employment practices as they bear upon promotional

opportunities, and to pay up to $80,000,000 in full settlement of plaintiffs' claims for monetary

relief, including the claim for statutory attorneys' fees.[2]  This Court approved the settlement on

August 10, 2005.  Under that settlement, every class member was eligible to receive monetary

relief and many class members stand to benefit from the required injunctive relief, which was

carefully crafted to address the major complaints pressed by the class in this case.

Pursuant to Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), class counsel seeks to

recover its fees and related costs and expenses incurred in litigating this case and obtaining

substantial monetary and injunctive relief on behalf of the class.[3]  Attorneys' fees are addressed

---

[1]      Plaintiffs exhausted all administrative procedures and received "right-to-sue" letters from the Equal Employment Opportunity Commission ("EEOC"), a condition precedent to filing a Title VII discrimination complaint in federal district court.  42 U.S.C. § 2000e-5; 29 C.F.R. §1601.13.  Class counsel engaged in a seven-month investigation before filing an administrative charge at the EEOC on March 7, 2000.  An amended charge was also filed on April 25, 2000.

[2]      42 U.S.C. §§1988(b) and 2000e-5(k) entitle prevailing plaintiffs to recover a reasonable attorneys' fee as part of the costs of the action.

[3]      Class counsel's fee request is based upon common fund fee principles, and that "fund" includes the statutory fees which the class was entitled to recover.  *See Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003).

in Section XI of the Settlement Agreement and Consent Decree (hereinafter "Consent Decree").

On August 10, 2005, following a fairness hearing at which there was not a single objection from

the class, this Court entered a judgment approving the entire Consent Decree and retaining

jurisdiction to award fees and costs to class counsel.  Although an award of attorneys' fees is

within the sound discretion of the Court, Sodexho does not dispute its obligation to pay the

attorneys' fees, litigation expenses, and costs incurred on behalf of the class, and it has expressly

agreed to discharge the class' equitable obligation to pay class counsel's fees and costs up to the

full amount for which counsel now seeks reimbursement, $26,666,667.00.[4]

As explained in detail below, the requested attorneys' fee is consistent with case law in

this and other districts, and falls squarely within the range of rates awarded by courts and under

private contracts.  Indeed, the percentage requested by class counsel is less than the percentage

---

[4]     Pursuant to Section IX(B) of the Consent Decree, notice of Preliminary Approval of
Consent Decree was mailed to all class members.  The Notice (Exhibit B to the Consent
Decree, Docket Entry No. 307) informed each class member that:  (a) of the $80 million
Sodexho agreed to pay under the Agreement, "approximately $53.3 million" was
"available to be paid to named Plaintiffs, and other persons who participated in the
litigation and to eligible settlement class members;" (b) Sodexho had agreed to pay  up to
$26,666,667.00 (i.e., the remainder of the total settlement amount) as attorneys' fees and
for reimbursement of litigation expenses and costs; and (c) any court-approved fee award
would fully discharge all claims by class counsel for its fees, costs and expenses.
Consent Decree, Exhibit B at ¶ IV(B) and V.  Such notice satisfies the Rule 23(h)(1)
requirement that notice of class counsel's fee motion be provided to defendants and to
members of the class.  See Advisory Committee Note to Rule 23(h)(1) (recommending
that notice of fee motion be combined with notice of settlement).  This is especially true
where, as here, cash payments to class members will not be affected in any way by the
award of fees.

The Court declined to consider class counsel's fees at the August 10 fairness hearing.  It
directed that the matter of fees be postponed until the McReynolds Claims Administrator
could provide information about "where 53.3 million [dollars] is going or not going," i.e.,
an estimate of the number of qualified claims that were timely submitted.  Aug. 10, 2005
Hearing Tr. at 6.  Class counsel's motion has therefore been filed at a time "provided by .
. . order of the court" under Rule 54(d)(2).

recently approved by the Court in another civil rights case. *See Bynum v. District of Columbia,* No. 02-956 (RCL), 2006 U.S. Dist LEXIS 2435 (D.D.C. Jan. 25, 2006) (33%). Class counsel's fee request is also supported by the outcome of the claims process. Based on reliable information received from the Claims Administrator, class counsel expects that at least 82% -- and possibly more than 96% -- of the available funds will be paid out to class members. In view of these results, relevant case law, and class counsel's skill and effort in litigating the case, the Court should find that class counsel's fee request is fair and reasonable.

## II.   Factual Background and Procedural History of This Case

The factual background and procedural history of this case are set forth in detail in Plaintiffs' Supplemental Memorandum of Law in Support of Joint Motion for Final Approval of Class Action Settlement (Docket Entry No. 311), with which the Court is already familiar. The Court has been deeply involved in this case from its inception, has written several comprehensive opinions that have carefully reviewed the voluminous record, and has resolved, or supervised the Magistrate's resolution of, many disputes involving discovery and other procedural matters. Therefore, the Court is well aware that class counsel had to spend an enormous amount of time and effort litigating this case. The Declaration of Kerry Alan Scanlon ("Scanlon Decl.") attached as Exhibit A hereto, which describes these efforts in greater detail, explains that over the course of almost six years, class counsel reviewed several hundred thousand pages of documents and took or defended 68 depositions of company officials, experts, former managers, and class members, consuming more than 90 days. Class counsel promptly obtained class certification, and then defended this Court's certification order in the D.C. Circuit and before the U.S. Supreme Court in response to Sodexho's petition for certiorari.

Class counsel also engaged in extensive merits discovery to identify additional testimony about specific instances of discrimination.  Although plaintiffs would have been content to rely on the statistical record generated for purposes of class certification, Sodexho chose otherwise.[5] At great cost, it created an entirely new record during merits discovery and had its statistical expert issue a new 257-paragraph report that required additional expert review and extensive factual analysis by class counsel and, ultimately, by the Court and its expert adviser.[6]

At the conclusion of merits discovery, class counsel successfully defended against a spate of defense motions seeking summary judgment, class decertification, rejection of the jury demand, and exclusion of plaintiffs' expert witness, Dr. Siskin.  In preparing their responses to these motions, class counsel completed a comprehensive review of deposition transcripts, documents, and expert reports, performed legal research on numerous legal issues, and drafted opposition briefs.  Class counsel also prepared for a three-month trial during this period.  Shortly before the trial was to begin, the parties agreed to a settlement.  The settlement was the culmination of complex, arm's-length negotiations that extended over three years and enlisted the

---

[5]     At the December 2, 2002, scheduling conference, the Court suggested that the parties not waste money to "redo" the statistics that had been generated for purposes of determining class certification.  Docket Entry No. 61, Hearing Tr. at 36.

[6]     To prepare its new report, Sodexho engaged a large team of Ph.D.'s and other professionals to interview current Sodexho managers, to comb through Sodexho's personnel files, and to create a new computerized database, which Sodexho's expert used to conduct an entirely new statistical analysis.  Based on the interviews, and the new data and analysis, Sodexho's expert concluded that Sodexho's central decision-making units were "Regional Vice Presidents" and that she could find no pattern of discrimination across these "RVP" groups.  Consequently, class counsel was required to expend additional time and resources reinterviewing witnesses about the significance (or lack thereof) of the RVP accounting code and consulting with its own statistical expert to review and respond to this new analysis.  The opinion denying Sodexho's summary judgment motion reflects that the Court also had to devote significant time and attention to this new analysis. *See McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 10-17 (D.D.C. 2004).

services of three different mediators. Each of these mediation sessions required substantial time, effort and expense, and class counsel was required to support the positions it took with additional legal research and expert analyses of back pay and other damages. Moreover, because the Court required that some of the settlement discussions be conducted by counsel who were not actively involved in this litigation, additional counsel had to learn about the factual and legal issues involved in the case.

In sum, the path leading to a final resolution of this case was long and hard, and it was undertaken by class counsel without any immediate compensation or assurance that it would ever receive any recompense for its vast outlays of time and money. Even after reaching the proposed settlement, class counsel has continued to expend substantial time and effort explaining settlement terms to class members, preparing a supplemental memorandum in support of the joint motion for final approval of the settlement,[7] and assisting in the process of locating and notifying class members.[8]

---

[7]   The Joint Motion (Docket Entry No. 310) prepared by Sodexho's counsel in support of the settlement, in which the class joined, did not, for example, explain why the class definition should be expanded to include employees who had been hired after the cut-off date the Court had established for trial purposes or why the service awards to specified class members were appropriate.

[8]   After the settlement was approved on August 10, 2005, class counsel contacted class members to confirm their mailing addresses and to explain the settlement process. Scanlon Decl. at ¶ 30-31. Class counsel also obtained a modification of the Consent Decree to provide additional time for class members who had been displaced by Hurricanes Katrina and Rita to file their claims. Docket Entry No. 313 (Stipulation and Order Modifying Consent Decree). Class counsel does not seek reimbursement for fees and costs associated with these post-approval activities, which they undertook solely to ensure that class members were advised of the settlement and had ample opportunity to obtain the relief to which they were entitled.

The settlement in this case provides a substantial benefit for all class members, while avoiding the inherent risks and uncertainties of continued litigation.[9]  Class counsel has obtained for the class up to $80 million in monetary relief and extensive injunctive relief requiring Sodexho, at very substantial cost and effort, to put in place and to maintain validated selection criteria and procedures, and to provide equal employment opportunity and diversity training to all managers, among other measures typically included in large-scale class action consent decrees. Both the company and the class have praised the settlement reached in this case.  *See, e.g., Bias Suit v. Sodexho Settled for $80 Million*, N.Y. Post, Apr. 28, 2005, at 40 (Sodexho's President and CEO stating that "We are a stronger and better organization as a result of this process.")

## III.    Class Counsel is Entitled to a Reasonable Percentage of the Class' Recovery

### A.    Class Counsel's Fee Award Should Be Based Upon a Percentage of the Fund

It is well-established that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[10]  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  *See also, Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993); *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL Docket No. 1290, 2003 U.S. Dist. LEXIS 12344, at *24-25 (D.D.C. June

---

[9]    "Risks inhere in the most airtight of cases."  *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979)

[10]    Although Sodexho has not placed $80 million in a separate account, a fee award may be based on the creation of a "constructive" common fund where, as here, a settlement establishes a definitive monetary recovery that will be distributed among class members. *See, In re Vitamins Antitrust Litig.*, MDL Docket No. 1285, 2001 U.S. Dist. LEXIS 25067, at *29 (D.D.C. July 16, 2001).  Constructive common funds are subject to the same equitable fee-sharing principles that apply to common funds generally.  *Id.*; *See also Staton*, 327 F.3d at 968-69 (using a common-fund approach even though class members were paid directly by defendant rather than from an actual common fund); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996) (common fund principles apply even where defendants have agreed to pay class counsel's fee).

16, 2003).  Equity entitles attorneys to a portion of the fund in order to avoid unjustly enriching passive class members who otherwise would obtain a free ride on the efforts of class counsel, without sharing its costs or risks.  *Van Gemert*, 444 U.S. at 478.

In the D.C. Circuit, a "percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."  *Swedish Hospital*, 1 F.3d at 1271; *accord, In re Baan Co. Secs. Litig.*, 288 F. Supp. 2d 14, 17 (D.D.C. 2003).  In *Swedish Hospital*, the Court of Appeals concluded that the percentage-of-the-fund method "most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases," and is more efficient than the so-called "lodestar" method, which is based on the hours of attorney time "reasonably" expended.  1 F.3d at 1269.

The considerations that led this Circuit to adopt the percentage-of-the-fund method apply equally where the statute supporting the legal claim that created the fund itself provides for the award of "a reasonable attorney's fee" as part of the judgment.  *See Staton*, 327 F.3d at 968 ("Application of the common fund doctrine to [Civil Rights Act] class action settlements does not compromise the purposes underlying fee-shifting statutes").  Accordingly, this Court has regularly used the percentage-of- the-fund approach to award fees in class actions under both the civil rights laws and the Clayton Act, which like the civil rights statutes under which this action was brought,[11] provides for a "reasonable" attorneys' fee.  *See, e.g., Bynum v. District of Columbia,* No. 02-956 (RCL), 2006 U.S. Dist LEXIS 2435 (D.D.C. Jan. 25, 2006) (Civil Rights Act); *In re Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *24-25 (Clayton Act); *In re Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *45-46 (Clayton Act).  *Accord, In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-79 (D. Mass. 2005) (applying common fund doctrine to antitrust settlement).

---

[11]     *See supra* note 2.

Moreover, the "fund" that is deemed to have benefitted the class includes both the moneys available to pay class-members' claims and moneys available to pay class counsel's fees and costs, which class members would otherwise be responsible for paying. *See In re Baan*, 288 F. Supp. 2d at 16 (determining award based on percentage of "gross settlement fund," *i.e.*, before attorney's and claims administrator's fees and expenses were deducted); *accord, Bynum,* 2006 U.S. Dist. LEXIS 2435 (awarding counsel 33% of gross "fund," before deductions for administrative expenses, class member payments, counsel's fees and costs, and fund-supported injunctive relief). Where, as here, the attorneys' fees will be borne by the defendant, rather than the class, the fees themselves represent "a valuable part of the settlement and thus fairly characterized as part of the common fund." *In re Vitamins,* 2001 U.S. Dist LEXIS 25067, at * 56; *see also Johnston,* 83 F.3d at 246 (fees paid directly by defendant to class counsel are an "aspect of the class' recovery").

**B.      Class Counsel Are Entitled to a Fee Based Upon a Reasonable Percentage of the Entire Fund**

"[C]lass counsel are entitled to a reasonable fee based on the funds potentially available to be claimed [by class members], regardless of the amount actually claimed." 4 Alba Conte and Herbert Newberg, Newberg on Class Actions §14:6 at 570 (4th ed. 2002). Indeed, under the Supreme Court's ruling in *Boeing v. Van Gemert*, it "is immaterial to an award of attorney's fees whether beneficiaries claim or accept the benefits obtained on their behalf." *Koppel v. Wien*, 743 F.2d 129, 134 (2d Cir. 1984).[12] In *Van Gemert*, the Supreme

---

[12]      *Accord, Int'l Precious Metals Corp. v. Waters,* 190 F.3d 1291, 1297 (11th Cir. 1999), *cert. denied,* 530 U.S. 1223 (2000); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997). Concurring in the denial of certiorari in *International Precious Metals*, Justice O'Connor read *Van Gemert* not to control where fees were "grossly disproportionate" to the money actually distributed to class members. Presumably, she viewed the fee awarded in *International Precious Metals* -- over 200% of the actual

Court ruled that counsel for the class was entitled to recover an appropriate portion of the entire settlement fund, even though less than half the class had presented claims and most of the fund, therefore, was likely to revert to the defendant. 444 U.S. at 476 n.4 (47% response rate as of certiorari).[13] The Supreme Court held that because each member of the class -- those who presented claims and recovered, and those who failed to do so -- had a right to claim "a mathematically ascertainable" part of the agreed-upon judgment, each member's right to a share of the judgment therefore represented a benefit, regardless of whether that class member chose to exercise his or her right. Therefore, all class members were obligated to share in the burden of paying counsel's fees. *Van Gemert*, 444 U.S. at 479- 480.[14]

Each member of the settlement class in this case likewise has a "mathematically ascertainable" claim to recover a predetermined amount, based upon his or her months of salaried exempt employment at Sodexho.[15] Indeed, the claims process, which requires only

---

payout to class members, as opposed to the 90% awarded in *Van Gemert* -- to be "disproportionate," but her concerns are not implicated in this case. There is no chance that class counsel will receive a fee that exceeds the money actually paid to class members. According to information received from the Claims Administrator, a minimum of 82.2% -- approximately $44 million -- and possibly as much as 96.7% of all funds available to the class under the Consent Decree will actually be paid out. Scanlon Decl. at ¶ 35. Thus, class counsel's $24.1 million fee request is only 54.8% of the likely minimum cash payout to the class, even ignoring the large monetary benefit to the class from Sodexho's agreement to pay class counsel's fees and costs as well as the McReynolds Claims Administrator's expenses.

[13]   This case is even more compelling than *Van Gemert* because the percentage of class members who have submitted claims far exceeds that in *Van Gemert*.

[14]   Upon remand, counsel was awarded almost $3.4 million, about 87% of the $3.9 million that was distributed to claiming class members. *Van Gemert v. Boeing Co.*, 739 F.2d 730, 733 (2d Cir. 1984).

[15]   Therefore, the class in this case is much more like that in *Van Gemert* than the class in *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844 (5th Cir. 1998), which was entitled to receive only a credit for continued telephone service and whose benefit could not be estimated sufficiently to support a fee award based upon a percentage of that benefit.

that a class member state a belief that he or she was discriminated against during the class period,[16] is less burdensome than it was in *Van Gemert*, where each investor was required to substantiate the claim with documentary support. *Van Gemert v. Boeing Co.*, 590 F.2d 433, 445 (2d Cir. 1978). The principles established in *Van Gemert* are therefore equally applicable to this fee request.[17]

Consistent with *Van Gemert*, in *Bynum v. District of Columbia*, 2006 U.S. Dist. LEXIS 2435, at *20, this Court recently awarded attorneys' fees based on a percentage of the gross settlement fund. In *Bynum*, the District of Columbia agreed to pay $12 million, at least $3 million of which was to be returned to the District to help to pay for injunctive relief, to settle a civil rights class action brought under 42 U.S.C. § 1983, involving the treatment of inmates. Although the total monetary payments to class members were capped at $5 million, before deducting the costs of claim administration, Court awarded class counsel a fee of $4 million (33.3% of the gross fund). Notably, the attorneys' fees award was ordered at the same time the Court granted final approval of the settlement agreement -- before the claims process had even begun.[18]

---

[16]     Consent Decree, Docket Entry No. 307, Exh. G.

[17]     There is another way this case is even more compelling than *Van Gemert*. Unlike the Boeing investors in the *Van Gemert* case, many of the class members in this case are still employed by Sodexho and are dependent on the company's good will. More than a few expressed strong concerns about being retaliated against if they filed a claim, notwithstanding the provisions of the decree and Sodexho's published assurances. Despite these factors, a very high percentage of class members in this case filed claims and stated under penalty of perjury that they had experienced discrimination based on race.

[18]     The settlement agreement provided for an increased award to individual claimants, up to a predetermined ceiling, if fewer than all class members qualified for monetary relief. Thereafter, any unclaimed funds would revert to the District to be used for injunctive relief. The fact that some class members might not file claims was not considered in the decision to award attorneys' fees.

At least when the attorneys' fees sought are not grossly disproportionate to the amount

of money actually distributed to class members -- which in this case they are not (*see* note 12,

*supra*) -- the teaching of *Van Gemert* is that the percentage of funds which is actually paid out

in the claims process is irrelevant.  In this case, the amount of the fee request compared to the

amount class members will actually receive is, in fact, eminently reasonable.  Based on

information provided in spreadsheets by the Claims Administrator, the Court can see that a

very high percentage of the $53.3 million will be paid out to class members.[19]  At a minimum,

there are 2,439 timely and qualified claims.[20]  Scanlon Decl. at ¶ 33.  The amount of money

expected to be paid to satisfy these claims is, at least, nearly $44 million and could be as much

---

[19]   The Claims Administrator's original spreadsheet, which has been redacted to exclude
identifying information, is attached to Mr. Scanlon's declaration as Exhibit 6.  Two
columns were added to this spreadsheet listing the minimum and maximum amounts of
money each qualified claimant is expected to receive.  *See* Exhibit 7 to Mr. Scanlon's
declaration.

[20]   It appears from the Claims Administrator's records that 273 additional claim forms were
filed that do not meet the eligibility requirements.  Scanlon Decl. at ¶ 36.  The overall
impact of these claims on the classwide payout is minimal.  For example, some class
members filed claim forms but answered "no" to Question #8, which asked if they
believed they had been discriminated against because of race in connection with a
promotion.  *Id.*  Some of these class members had only worked for the company for a
short period of time.  The payments these class members would have received only
amount to approximately $1 million, compared to at least $44 million in expected
payments to class members who answered "yes" to that question.  *Id.*  Other claim forms
do not qualify for various reasons, such as untimeliness, incompleteness, or not satisfying
the race or employment requirements.  In addition to these non-qualified claims, there
were approximately 400 class members who could not be found despite class counsel's
efforts to make contact with them.  *Id.* at ¶ 30.  The eligibility of a small number of
claims is still being considered by the Claims Administrator.  *Id.* at ¶ 33, n.3.

as $51.6 million.[21]  Scanlon Decl. at ¶ 34-35.  Thus, the payout to class members is expected

to be somewhere between 82.2% and 96.7% of the total available funds.  *Id.*

## IV.   Class Counsel's Requested Percentage is Fair and Reasonable

Although the D.C. Circuit has "not yet developed a formal list of factors to be

considered" when approving fee awards in common fund cases, this Court has found the

following factors to be useful:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of
> the attorneys involved; (4) the complexity and duration of the litigation; (5) the
> risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs'
> counsel; and (7) the awards in similar cases.

*In re Baan*, 288 F. Supp. 2d at 17 (citation omitted).  Viewed in light of these factors, class

counsel's request, which amounts to slightly over 30% of the common fund, is reasonable.

### A.   The Fee Request is Reasonable Considering the Substantial Benefit
### Conferred on All Class Members

"Courts have regarded exceptional benefits to a large class as grounds for a higher fee

award." *In re Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *62.  The class in this case is large

(comprising approximately 3,400 members) and the benefits it will receive are exceptional.  In

addition to the substantial non-monetary relief that class counsel obtained for the class, *all*

class members were eligible for a monetary award under the settlement.  The monetary benefit

to the class in this case is very substantial, both in absolute and relative terms.  The settlement

---

[21]    According to the Claims Administrator's records, many class members provided dates
reflecting longer terms of qualifying employment than the presumptive dates established
under the Consent Decree.  If these class members submit documentation verifying longer
periods of salaried exempt employment, then the payout could increase from $44 million
to as high as $51.6 million.  Scanlon Decl. at ¶ 35; *see also* Consent Decree at X(D)(4)(b)
(permitting class members to dispute Sodexho's records).

requires Sodexho to pay up to $80 million, including attorneys' fees, to compensate class

members for the losses they suffered as a result of the challenged employment practices. This

monetary relief represents one of the largest employment discrimination recoveries known to

class counsel. Scanlon Decl. at ¶ 7; *see also,* Michael Selmi, *The Price of Discrimination:*

*The Nature of Class Action Employment Discrimination Litigation and Its Effects,* 81 Tex. L.

Rev. 1249, 1258 (2003) (reporting median recovery of $28 million in race discrimination

lawsuits filed or settled between 1991 and 2001).

The Court has already complimented counsel for the targeted, effective injunctive relief

they agreed on, which specifically addresses each of the discriminatory practices alleged in this

case and mirrors the relief requested in the complaint. *See* Apr. 27, 2005 Hearing Tr. at 16;

August 10, 2005 Hearing Tr. at 26. Requiring Sodexho to follow a merit-based and validated

promotion process will go far toward eliminating the subjective, uncontrolled and opaque process

that gave rise to the allegations of discrimination underlying the class' complaint. Creating and

maintaining these new standards and procedures requires a very substantial effort by Sodexho,

costing scores of millions of dollars by Sodexho's own estimate.[22] Thus, the substantial benefits

---

[22]    During settlement negotiations, Sodexho's counsel, George W. Johnston, asserted that
these efforts would cost between $42 and $58 million during a two-year period. *See*
Scanlon Decl. at ¶ 6. Although made in the context of a settlement proposal, Sodexho's
valuation should be taken into account in assessing the value of the injunctive relief. *See*
*Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002) (en banc) (plaintiff's
settlement-offer estimate of its trademark's value is relevant to establish amount-in-
controversy and not barred by Fed. R. Evid. 408). The reference for Sodexho's estimate
was inadvertently deleted from the supporting documentation provided in support of the
Consent Decree. Counsel apologizes for this oversight.

Class counsel does not suggest that the Court should value the "fund" created by the
settlement at $122 million or more based upon Sodexho's representation. Rather,
Sodexho's estimate serves to underscore the point that the injunctive relief won through
the settlement is very valuable, surely a "relevant circumstance in determining what
percentage of the common fund class counsel should receive as attorneys' fees . . . . "

-- both monetary and nonmonetary -- that class members will receive under the Consent Decree weigh strongly in favor of granting the requested legal fees and expenses.

**B.     The Complexity and Duration of this Class Action Favor Granting the Requested Attorneys' Fees**

The litigation's complexity and duration also weigh in favor of awarding class counsel's requested fees.  Beyond the very modest retainers it received from the named plaintiffs, class counsel has received no compensation for its efforts in this case, during the many years in which Sodexho's aggressive defense of all claims and issues further contributed to the case's cost and duration.[23]  Although the Court has been closely involved with this litigation from beginning to end and is familiar with the efforts both sides spent to litigate and to resolve this case, we have provided some additional perspective in support of this motion  from prominent litigators, including a former United States District and Circuit Judge, each of whom has extensive experience -- in many cases more than 30 years -- in this District and elsewhere litigating employment discrimination class actions.  These experienced practitioners, who have handled some of the largest Title VII class actions in history, confirm that the types of claims brought by plaintiffs here and the difficulty of establishing classwide liability and damages all made litigating this case very risky and expensive, and that the tenacity of Sodexho's defense greatly magnified those risks and expenses.

Although this Court has had many occasions to observe the take-no-prisoners defense that Sodexho mounted, the declarations of many civil rights litigators confirm that Sodexho's defense was "strong and relentless."  *See, e.g.*, Exhibit K, Declaration of Timothy K. Lewis ("Lewis

---

*Staton,* 327 F.3d at 974 (citation and internal quotation omitted).

[23]     The retainer agreements with the named plaintiffs required each plaintiff to pay $1,000 and provided that counsel would be reimbursed for its costs and paid the remainder of its legal fees on a contingency basis.  *See* Scanlon Decl. at ¶ 9 and 11.

Decl.") at ¶ 5.  From the outset, Sodexho's highly experienced defense counsel "made every effort they could" to dismiss, limit or delay plaintiffs' claims.  *Id.*  Indeed, after reviewing the pleadings and memoranda filed by the parties, Joseph Sellers, a veteran of more than 30 large discrimination class actions and currently counsel in the *Wal-Mart* case, found this case to have been one of the most vigorously defended equal employment class actions he has ever seen.  Exhibit L, Declaration of Joseph M. Sellers ("Sellers Decl.") at ¶ 6.  Considering the overall complexity and duration of this case, class counsel's fee request is reasonable and fair.

### C.   The Requested Fees Fairly Compensate Class Counsel for the Risk of Nonpayment

This Court has also considered the risk of nonpayment in determining the amount of a fee award.  *See, e.g., In re Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at \*29.  As the Declaration of John M. Clifford ("Clifford Decl."), a veteran of more than 125 jury trials and a former Co-Chair of the District of Columbia Bar's Litigation Section attests, few law firms are willing or able to commit the resources needed to prosecute to conclusion a case of this magnitude, especially in the face of the defense Sodexho mounted.  Exhibit E, Clifford Decl. at ¶ 3.  *See also* Exhibit M, Declaration of Cyrus Mehri ("Mehri Decl.") at ¶ 5; Sellers Decl. at ¶ 7.  The Declaration of Marc Fleischaker ("Fleischaker Decl."), Chairman of the Executive Committee of Arent Fox, discusses the "daunting" burden that a major Title VII case imposes even on large law firms such as Arent Fox or Kaye Scholer, burdens that tend to discourage most law firms of this caliber from handling a major Title VII case.  Exhibit H, Fleischaker Decl. at ¶ 5.  And these burdens are magnified when one takes into account the very significant risks of nonpayment that characterize Title VII class actions generally and this case in particular.  As Mr. Fleischaker observes, the decisional law in this area "has undergone considerable change, is still changing, and is anything but certain," making cases such as this one "a risky proposition."  Fleischaker Decl. at ¶ 8.  Indeed,

developments in the law over the past decade have increased the risks of securing class

certification in employment discrimination cases, and or winning at trial, and on appeal.  Sellers

Decl. at ¶ 7.[24]  In this case, class counsel faced significant risks of being denied class certification,

and indeed, the Court only certified the class for liability purposes.

The Court has already complimented counsel on the quality of its briefs, and its appraisal

is echoed in the declarations of Mr. Lewis (Lewis Decl. at ¶ 7) and experienced litigators, like Mr.

Fleischaker, who declared that class counsel's certification motion was among "the best prepared

motions of this type I have ever seen in a Title VII or any other case."  Fleischaker Decl. at ¶ 18.

If class certification had been denied altogether, the case could not have proceeded as a class

action and class counsel would have lost three years' worth of unrecoverable fees and expenses

which had been invested in the case.

The risk of nonpayment did not end once the Court certified the class for liability.

Sodexho filed motions for decertification, summary judgment, and exclusion of plaintiffs' expert

statistician, any of which could have resulted in dismissal of the case.  Moreover, the class stood

to lose any chance of recovery if the jury did not find Sodexho liable after a trial, and trials are full

of risk.[25]  Furthermore, success at the liability trial might not have resulted in any recovery.

Following a liability verdict for the class, this Court's underlying certification ruling again would

have been subject to appeal, and an adverse appellate decision would have eliminated the class

entirely.  Thus, class counsel has faced a risk of nonpayment throughout the entire pendency of

---

[24]   The propriety of certifying civil rights class actions, which contain claims for both
damages and injunctive relief, continues to be debated by appellate courts.  *See. e.g., Reeb
v. Ohio Dep't of Rehab. & Corr.*, No. 04-3994, 2006 U.S. App. LEXIS 1624 (6th Cir.
Jan. 24, 2006).

[25]   For example, a jury recently found for defendant in a large employment
discrimination class action in another district.  *Williams v. Boeing Co.,* No. C98-761P,
(W.D. Wash. Dec. 21, 2005) (verdict form).

this case. Even if the class had survived all the traps and hurdles necessary to obtain and sustain a liability verdict, that would only open the door to years of additional expense and uncertainty before a class member could hope to realize any monetary recovery. Indeed, "[h]istory is replete with cases in which plaintiffs prevailed at trial on issues of liability, but recovered little or nothing by way of damages." *In re Lupron Mktg. & Sales Practs. Litig.*, 2005 U.S. Dist. LEXIS 17456, at *16 (D. Mass. Aug. 17, 2005).

### D.   The Requested Fees Fairly Compensate Class Counsel for their Skill and Efficiency in Litigating this Case

As the attached declarations reflect, this case required a capacity that "would have tested the ability, endurance and resources of the very best attorneys in the country." Lewis Decl. at ¶ 5. Based on his experience as a litigator, judge and mediator and his review of the principal pleadings and briefs in this case, Mr. Lewis, who knows class counsel only by reputation, declares that he has not seen a major employment case litigated more effectively than this case. Lewis Decl. at ¶ 6.

In view of the number, tenacity and quality of the partners and associates on Sodexho's team, it is not surprising that class counsel had to commit a great number of hours to prevail. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344, at *30 (D.D.C. June 16, 2003) (caliber of opposing counsel required class counsel to "be capable of providing comparable services"). Although the number of hours Kaye Scholer attorneys and legal staff committed to this case is high, their level of commitment "reasonably reflects the intensity and excellence of the defense, the duration of the litigation and size of the class, the complexity of the statistical issues, and the excellent results achieved." Lewis Decl. at ¶ 7. Staffing of the case was appropriate considering the complexity of the case and the unusual level of staffing -- including at least nine partners -- that Sodexho deployed. Fleischaker Decl. at ¶ 12. Most of the legal work

required for this case was performed by two partners and five associates at Kaye Scholer, with additional assistance from other attorneys at critical, time-sensitive stages of the litigation. Moreover, class counsel's ability to reach a settlement before any trial on liability or damages also demonstrates the efficiency with which this case was litigated.  Thus, the skill and efficiency of class counsel also warrants approval of the requested attorneys' fees.

### E.    The Requested Attorneys' Fees are Reasonable In Comparison to the Time and Expenses Actually Incurred by Class Counsel

Although it is not required in this Circuit, some courts have compared the percentage of the fee award against the attorneys' actual time expenditure to satisfy themselves that a fee award does not result in a windfall.  *See In re Baan*, 288 F. Supp. 2d at 18, 19.[26]  *See generally* Manual for Complex Litigation (Fourth) §14.122 (2004) (recommending "cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate").  Attached as Exhibit 8 to the Scanlon Declaration are printouts from Kaye Scholer's records detailing the time devoted by Kaye Scholer attorneys and legal assistants and the regular hourly rates Kaye Scholer routinely charged clients for such time during this case.[27]  As of August 10, 2005, when the Court finally approved the settlement, class counsel's attorneys and legal assistants had

---

[26]  In the *Baan* case, this Court's view that counsel's hours were "on the high side" but "not out of line" was based on a review of counsel's statement of the hours its time-keepers had recorded and their historic and current billing rates.  Class counsel did not submit, and the Court did not require, narrative descriptions for each day's time entries.  Indeed, undertaking a detailed review of counsel's time records to second-guess whether the hours counsel spent were "reasonable" would have required the very complexity and delay that led this Circuit to abandon the lodestar method.  *See Swedish Hospital*, 1 F.3d at 1268-69.

[27]  Consistent with the record the Court considered in *Baan*, and for the reasons expressed in *Swedish Hospital*, review of the narrative descriptions of the work performed by each time-keeper is not necessary when cross-checking a percentage fee.  *See also* Vaughn R. Walker and Ben Horwich, "The Ethical Imperative of a Lodestar Cross-Check," 18 Geo. J. Legal Ethics 1453, 1463-64 (2005) (court may rely on class counsel's representations).

collectively devoted more than 51,000 hours to this case, representing a historic "lodestar" of almost $15.4 million at historic billing rates.  Scanlon Decl., Ex. 8.  Therefore, even without taking into account the value of counsel's time at its current billing rates -- which would result in multiplier of about 1.3 -- the fee request represents a multiplier of less than 1.6, which is well within the range of multipliers courts have found reasonable.[28]

If the Court is disposed to "cross-check" the fee request against the time counsel has expended, it should value that time at current billing rates because comparing counsel's fee request with the "billable time" it accumulated at historic rates significantly undervalues counsel's time, by ignoring the time value of the money counsel would expect to receive from regular paying clients. *Missouri v. Jenkins,* 491 U.S. 274, 283 (1989).  In *Bebchick v. Wash. Metro. Area Transit Comm'n,* 805 F.2d 396, 403 (D.C. Cir. 1986), the D.C. Circuit looked at the value of class counsel's time based on the rates he had charged paying clients at the time he submitted his fee application, rather than the deflated value of that time based on his billing rate during the many years he was litigating on the class' behalf, and the appellate court awarded class counsel fees equivalent to 1.6 times that current "lodestar."[29] *See Swedish Hospital,* 1 F.3d at 1267 (describing *Bebchick* as awarding "the

---

[28]   Class counsel's request includes $2,566,937.29 in out-of-pocket expenses.  The fee portion of its request is therefore $24,099,729.71, which is less than 1.6 times the historic lodestar of $15,392,097.70.  Scanlon Decl., Ex. 9 shows the current value of class counsel's time to be $18,373,504.10.  The $24,099,729.71 fee request is 1.3 times this current value lodestar.

[29]   The "current" billing rates referred to were those reflected in counsel's 1982 fee petition, which appear to have been the latest reported rates.  The appellate court determined the appropriate fee itself as a matter of "judicial efficiency," rather than further delay counsel's long-overdue reward.  805 F.2d at 398 n.3.  In light of the long delay in deciding the fee petition, the court had already made an interim fee award of $500,000, which amounted to about 30% of the ultimate award.  805 F.2d at 401.

lodestar plus a sixty percent enhancement");[30] *see also In re Baan*, 288 F. Supp. 2d at 18 (citing historic and current time values).[31]

In *Baan,* this Court found a multiplier of 2.0 or less to fall "well within a range that is fair and reasonable." 288 F. Supp. 2d at 19-20.  Courts here and elsewhere have approved attorneys' fees with much higher multipliers. *See, e.g., In re Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *32 (noting that multipliers up to 4 are permissible); *see generally* Walker et al., *supra* note 22, at 1472-73 (finding many multipliers in 3-4 range and suggesting that courts may be reluctant to cut fee percentage where multiplier is 4.5).  As the attached declarations of many prominent class action litigators also attest, the multiplier represented by class counsel's fee request is reasonable, and if anything, is "much lower than [one] would have expected."  Exhibit D, Declaration of Dennis Chong ("Chong Decl.") at ¶ 4.  Indeed, some highly experienced practitioners in this District believe that the multiplier is too low for a major case such as this one, in which the class has obtained "exemplary" results.  Clifford  Decl. at ¶ 4; Sellers Decl. at ¶ 11. *See* Mehri Decl. at ¶ 6 (requested multiplier is "far less" than that awarded in *Texaco* and *Coca-Cola* class action settlements, in which he served as class counsel).

Class counsel's lodestars are reasonable in light of the complexity and protracted duration of the case, "the zealousness of defense counsel, and the magnitude of the work required." *In re Baan*, 288 F. Supp. 2d at 19.  They "reasonably reflect . . . the intensity and excellence of the defense, the duration of the litigation and size of the class, the complexity of the statistical issues

---

[30]   *Swedish Hospital* now requires fee awards in common fund cases to be calculated based upon a percentage of the fund, but its discussion of *Bebchick* suggests that if a "cross-check" against the lodestar is to be conducted, the "lodestar" should reflect counsel's current rates.

[31]   The lodestars in *Baan* were about $4.9 million and $5.4 million at historic and current rates, respectively.  The $9.1 million fee award represented a multiplier of about 1.9 at historic rates and 1.7 at current rates.

21

and the excellent results achieved . . ." Lewis Decl. at ¶ 7.  As described more fully in Sections

IV.B and D, this case required "very hard work, extraordinary competence and an unparalleled

commitment." Fleischaker Decl. at ¶ 13.  Thus, "the reasonableness of the requested amount is

confirmed when cross-checked with the lodestar approach." *In re Lorazepam & Clorazepate*

*Antitrust Litig.*, 205 F.R.D. 369, 385 (D.D.C. 2002).[32]

**F.     Class Counsel's Fees are Reasonable in Light of Sodexho's Defense Costs**

Class counsel's expenditures are also reasonable compared to those Sodexho spent for

defense counsel, who presumably were paid regularly throughout the case's more than five years,

whether they won or lost. *See Ruiz* v. *Estelle,* 553 F. Supp. 567, 584 (S.D. Tex. 1982)

(defendants' legal fees are helpful in assessing reasonableness of plaintiffs' fee request).  Class

counsel does not have access to the bills Sodexho received from the multiple law firms who

represented the company during most of this case, but it is reasonable to expect that these bills

totaled more than $20 million, without counting the salaries of the several in-house lawyers who

devoted most of their time to this case.[33]  The Court can get a sense of Sodexho's commitment to

its defense from its most recent SEC filings (for 2005) which show that Sodexho utilized €7

million (close to $9 million) during the August 2004 to 2005 fiscal year for "employee claims

and litigation." Sodexho Form 6-K at 213 (Jan. 12, 2006) (Table 4.18, Provisions for

---

[32]     Based on the fee petition in *Bynum*, the $4 million attorneys' fees award represented a
multiplier of 1.94.  *See* Fee Petition of Class Counsel at 57, *Bynum v. District of
Columbia,* No. 02-956 (RCL) (D.D.C. Jan. 20, 2006) (Docket No.132-1).  This fee also
was more than 85% of the monies available to class members which, after deducting
administrative expenses and other costs, could not have exceeded $4.6 million.

[33]     Class counsel has not sought discovery of Sodexho's legal expenses, because the
reasonableness of its fees has not been drawn into question and, indeed, Sodexho has
agreed to pay them, upon the Court's approval.  If the reasonableness of class counsel's
efforts were to be questioned, then class counsel would be entitled to discovery of defense
counsel's time records  *State of New York v. Microsoft Corp.,* No. 98-1233, 2003 U.S.
Dist. LEXIS 8713, at *9 n.3 (D.D.C. May 12, 2003).

Contingencies and Losses, of its Consolidated 2005 Financial Statement).[34]  When coupled with

the €8 million reported in its SEC Form 20-F as having been spent during the previous two

fiscal years, Sodexho spent €15 million (*i.e.*, more than $17 million) on its defense *after* the

Court certified a class.  4.3 Litigation (Consolidated 2004 Financial Statements) (*available at*

http://sec.gov/Archives/edgar/data/1169715/000095010304001695/nov2004_20f.txt).  Indeed,

Sodexho's expenses for experts *alone* must have far exceeded $5 million (nearly $4 million was

spent on Dr. Haworth's *second* expert report alone[35]), which is more than triple the $1.5 million

class counsel spent for *all* experts in all years (including the Court's separate expert).

   The Court has had many opportunities during the many hearings in this case to observe

first-hand the financial commitment Sodexho made to its defense.  Although class counsel was

not obliged to -- and did not -- match Sodexho lawyer-for-lawyer and dollar-for-dollar, we

believe the effort class counsel did make -- entirely at its own risk -- was reasonable in light of

---

[34]   Sodexho booked a separate €61 million ($77.5 million) charge as result of the settlement. *See* Table 4.18 n.1 (*available at* http://sec.gov/Archives/edgar/data/1169715/000095010306000091/jan1206_6k.htm).

[35]   During discovery, Sodexho produced invoices showing that ERS Group charged Sodexho fees and costs totaling nearly $3.5 million just for the nine-month period beginning December 22, 2002 through September 21, 2003. *See* Scanlon Decl. at ¶ 14.  These fees were presumably charged in connection with Dr. Joan Haworth's July 31, 2003, expert report.  However, these invoices did not reflect the fees that were incurred (1) in connection with Dr. Haworth's 20-page October 2003 supplemental report; (2) for work performed by Dr. Haworth and her team of five Ph.D.'s and five other full-time employees from the spring of 2001, when Sodexho hired ERS, until October of 2001, when Dr. Haworth was deposed about the massive report she prepared in opposition to plaintiffs' class certification motion; (3) for Dr. Haworth's preparation and testimony at two additional depositions in October and December of 2003; (4) for Dr. Haworth's preparation of another analysis and declaration supporting Sodexho's 2004 summary judgment motion; and (5) for Dr. Haworth's preparation of an entirely new "Breslow-Day" analysis that Sodexho presented at the December 2004 summary judgment hearing.  Furthermore, Sodexho paid Leonard Biermann $104,544.21 for three month's work between May 6, 2003 and August 5, 2003.  *Id.*  Moreover, Sodexho also incurred significant expert fees from Professor David Bloom (Sodexho's second expert on class certification) and Dr. Janet Lundquist, Sodexho's non-testifying expert who also proffered a 44-page report (excluding exhibits) and attended Dr. Prien's deposition.

what Sodexho was willing to pay for its defense. *See M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 830 (D. Mass. 1987) (class counsel's fees were reasonable in light of defendant's "stubborn and vigorous opposition").

### G.    The Requested Fees are Comparable to Awards in Similar Common Fund Cases

In *Baan*, this Court found that a fee equivalent to 32% of the gross settlement fund (*i.e.*, before fees and costs were deducted) would have been "in line with awards in class actions from this and other districts." 288 F. Supp. 2d at 19.  Nevertheless, the Court reduced the award to 28% because it found class counsel's performance "unimpressive" for much of the case's duration. 288 F. Supp. 2d at 20-21.[36]

In contrast, class counsel litigated this case with vigor, diligence and zeal. Class counsel moved for certification, supported by a 46-page brief and at least 1,500 pages of exhibits, by the deadline established by the Court, and the case was certified quickly, within one year of filing the complaint. *Cf. In re Baan*, 288 F. Supp. 2d at 20 (4-year gap between complaint and certification, due in part to counsel's neglect). This case was hard-fought, requiring extensive factual and expert discovery, more than 90 days of depositions, and the review of hundreds of thousands of documents.[37] Class counsel filed numerous briefs in support and opposition of motions, reviewed and synthesized evidence for presentation at trial, and participated in four

---

[36]    Another characteristic that distinguishes this case from *Baan* is the difficulty civil rights plaintiffs encounter in obtaining experienced, skilled representation. "Historically, claims alleging systemic employment discrimination are difficult to win," and thus, undesirable to attorneys, especially if fees are to be paid on a contingency basis. *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001). In contrast, *Baan* was a mass of "lawyer-driven" securities fraud actions that were filed days after the company's stock price fell. *See In re Baan Co. Secs. Litig.*, 271 F. Supp. 2d 3 (D.D.C. 2002) (denying belated class action motion without prejudice).

[37]    Almost every deposition consumed a full day or more. By way of comparison, in *Baan*, "over 25" depositions were taken and "over 300,000 pages of documents" were reviewed. 288 F. Supp.2d at 18.

rounds of settlement negotiations. The case proceeded as quickly as could be expected considering the complexity of the factual and legal issues involved and the massive work that had to be done. That class counsel prevailed on each attempt to defeat or significantly narrow the claims in this case is a testament to "the extraordinary talent and energy" they devoted to this case. Exhibit F, Declaration of Daniel B. Edelman ("Edelman Decl.") at ¶ 4.

Consistent with this Court's observation in *Baan,* a review of decisions in this and other districts further confirms that courts commonly have awarded fees representing 30% or more of the common fund. *See, e.g., Bynum,* 2006 U.S. Dist. LEXIS 2435 (33%); *In re First Databank Antitrust Litig.*, 209 F. Supp. 2d 96, 101 (D.D.C. 2002) (30%)[38]; *In re Lorazepam,* 2003 U.S. Dist. LEXIS 12344, at *32-33 (same); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (affirming lower court's award of 30% of the settlement and noting that lead counsel provided "thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund" in support of its petition for fees); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) (finding 30% reasonable based upon comprehensive review of recent awards); *Moore v. United States*, 63 Fed. Cl. 781, 787, 789 (Fed. Cl. 2005) (awarding "essentially 34% of the total award" and noting that "one-third is a typical recovery").

The declarations of experienced practitioners further confirm that the 30.1 percentage award that class counsel seeks is no more than the "standard" in this jurisdiction given the risk involved and the high level of legal skill demonstrated by class counsel. Edelman Decl. at ¶ 4.

---

[38]   Judge Jackson awarded class counsel for direct purchasers 30% of the fund created by its efforts, which consisted of negotiating a supplemental recovery for their class over and above what was "already 'on the table'" as a result of the Federal Trade Commission's investigation and "spadework." 209 F. Supp. 2d at 98-101. In contrast, the fund in the present case results entirely from class counsel's labor, skill and perseverance.

Indeed, in the opinion of a veteran employment discrimination lawyer, the requested percentage is "actually low." Clifford Decl. at ¶ 4. The percentage is not only smaller than that requested in *Baan* (32%), it is somewhat lower than the 33% contingency fee which the named plaintiffs in this case have themselves agreed to pay class counsel. *See* Scanlon Decl., Ex. 2 & 3 (Engagement Letters between class counsel and named plaintiffs). Considering the aggressive manner in which class counsel litigated this demanding case, and the fee awards in similar cases, this Court should award the full amount requested.

### H.    The Requested Fees Are Similar to Fees Awarded in Individual Discrimination Cases

In light of the equitable considerations supporting class counsel's request, it is reasonable to expect absent class members, who will share in the benefit of class counsel's labors, to share equally with the named plaintiffs in compensating class counsel for its labor and out-of-pocket costs. Like most Title VII complainants, the named plaintiffs could not bear the expense of a class action discrimination lawsuit, and therefore entered into a contingency fee agreement entitling class counsel to 33% of any recovery. The attached declarations demonstrate that the retainer agreements between class counsel and the named plaintiffs here reflect the standard market rate for contingency fees in these types of cases. Exhibit I, Declaration of Bruce A. Fredrickson ("Fredrickson Decl.") at ¶ 5 ("contingency arrangements of 33% or more are standard for plaintiffs' employment lawyers in the District of Columbia"); Exhibit B, Declaration of Alan Banov at ¶ 5 (33% if no administrative settlement); Exhibit C, Declaration of David R. Cashdan ("Cashdan Decl.") at ¶ 4 (33-40%); Chong Decl. at ¶ 3 ("at least 33%"); Exhibit G, Declaration of Robert B. Fitzpatrick at ¶ 2 (frequently 40%); Exhibit J, Declaration of Alan Lescht at ¶ 2 (40%). That the retainer agreements reflect normal market rates further supports the reasonableness of class counsels' fee request. *Swedish Hospital,* 1 F.3d at 1269 (evidence of

individual fee agreements, although not binding on the class, helps assure that court-awarded fee approximates the market); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (a retainer agreement "may be probative of the fee award's reasonableness."); *Robinson v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 12071, at *8 (S.D. Ohio 2005) ("the Court gives substantial weight to the Parties' negotiated fee agreement especially where, as here, the fee is entirely consistent with a reasonable fee award under controlling law and the circumstances of the case"). At least one Circuit has instructed that "courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001); *see also, Taubenfeld*, 415 F.3d at 599 ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time") (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) *vacated in part on other grounds*, 325 F.3d 974 (7th Cir. 2003)).

The declarations of experienced counsel also show that few class members could afford to pursue a case like this without a contingency fee agreement, and few attorneys would have been willing to take on this case without charging a one-third contingency fee, considering the time, expense and risks involved in pursuing a class action race discrimination case.[39] *See, e.g.*, Cashdan Decl. at ¶ 4. Even fewer lawyers could or would undertake a class action discrimination

---

[39]    Indeed few if any solo practitioners or small law firms could have afforded to litigate this case on a contingency basis for nearly six years. Thus, the duty of enforcing civil rights cases like this has fallen to larger laws firms that have more resources to sustain such cases. If these law firms are not adequately compensated for their representation, they will be less likely to take on such cases in the future, and Congress' intention of enforcing civil rights through private actions will no longer be fulfilled. *See generally* Section V, *infra*.

case, because such cases are extremely difficult and expensive to litigate, requiring expensive expert analyses and discovery just to achieve class certification. *See* Fleischaker Decl. at ¶ 5; *see also Ingram*, 200 F.R.D. at 689. A fee award of 33%, which exceeds the fee class counsel has requested, would therefore be reasonable in this case.

### I.       The Absence of Objections Weighs in Favor of Approval

The final factor this Court has considered in determining whether to approve attorneys' fees in a class action is the number of objections from class members. *See, e.g., In re Baan*, 288 F. Supp. 2d at 17 (finding it "noteworthy . . . that only one objection to counsel's application for attorneys' fees [had] been filed"); *see Swedish Hospital,* 1 F.3d at 1271 (lack of objections by class members is relevant to reasonableness of fee). In this case, there have been *no* objections to class counsel's motion for attorneys' fees, or indeed to any other part of the settlement. Thus, the lack of objections to class counsel's fee request further demonstrates the reasonableness of class counsel's fees.

### V.     Public Policy Encourages Approval of the Requested Attorneys' Fees

If class members had brought individual claims against Sodexho, their attorneys would have been entitled to at least one-third of the individual's recovery, which is the current market rate for contingency agreements between civil rights attorneys and individual Title VII plaintiffs. The principle of judicial economy, however, favors litigating this case as a class action rather than 3,400 individual trials. Few attorneys would be willing to take on a complex class action, such as this, unless they too received payment equal to one-third of the award or settlement. Thus, for the sake of judicial efficiency, the Court should continue to encourage these claims to be brought as class actions by awarding counsel the same percentage of the common fund that it would have received if the class action were brought as numerous individual claims. In this case, however, class counsel only seeks 30.1% of the fund.

Throughout the pendency of this case, class counsel has devoted an enormous percentage of its time and efforts to this case, despite the risk of recovering none of its legal fees. Indeed, class counsel was limited in his ability to take on other substantial work due to the demands of this litigation. Scanlon Decl. at ¶ 20. Fee awards must be fair and rewarding to attract highly skilled counsel, "who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988). This Court should therefore grant the fee request, which adequately compensates and rewards class counsel for successfully litigating and settling this case.

## VI.   Class Counsel is Entitled to Reimbursement for the Costs and Litigation Expenses Incurred for this Class Action

"Class counsel in common fund cases are also entitled to 'reasonable litigation expenses from that fund.'" *In re Baan*, 288 F. Supp. 2d. at 21 (quoting *In re First Databank*, 209 F. Supp. 2d at 98 n.4 (D.D.C. 2002). Class counsel seeks reimbursement of its litigation expenses and costs, which total $2,566,937.29. These costs were necessary for the effective prosecution of the case and were incurred for expenses such as expert and mediator fees, court reporter and transcription services, computerized legal research, travel expenses, working meals, photocopying, and long-distance telephone charges. *See* Scanlon Decl., Ex. 10. These expenses are reasonable in light of the complexity and protracted duration of the case, the extensive factual and expert discovery involved, and the four rounds of settlement negotiations undertaken by class counsel. They appear to be a small fraction of what Sodexho found it necessary to pay for its defense. Therefore, class counsel respectfully request reimbursement of all litigation expenses and costs.

## Conclusion

For the foregoing reasons, class counsel respectfully requests the Court to issue an order awarding the requested attorneys' fees, litigations expenses, and costs. Any amount less than 30.1% of the common fund would fail to compensate class counsel for the complexity, duration, expense, and risks involved in skillfully litigating the case and achieving the substantial relief provided in the Consent Decree.

Respectfully submitted,


_____ /s/ _____
Kerry Alan Scanlon #942276
David O. Bickart #355313
Karen R. Robinson #483207
KAYE SCHOLER LLP
901 15th Street, NW, Suite 1100
Washington, DC  20005
(202) 682-3500

Class Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2006, a true and correct copy of the

foregoing Motion for an Award of Attorneys' Fees, Litigation Expenses, and Costs was served by

U.S. mail and/or electronic mail upon the following counsel for defendant:

Glen D. Nager
Jones Day
51 Louisiana Ave., N.W.
Washington, D.C. 20001
202-626-1700 (fax)

_____/s/_____
Karen R. Robinson